IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.  Criminal Action No. 3:01cr304-12

**JAMAR BROWN,**

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Jamar Brown's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 727.) The United States responded in opposition (the "Opposition"). (ECF No. 733). Brown did not reply and the time to do so has expired. The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

### I. Background

On November 20, 2001, the United States named Brown in two counts of a three-count superseding indictment, charging him with violating the RICO Act, 18 U.S.C. § 1962(c) ("Count One") and conspiracy to distribute cocaine base, 21 U.S.C. § 846 ("Count Two"). (Indictment 18–22, ECF No. 67.) On February 14, 2002, Brown pled guilty to Count One of the superseding indictment. (Plea Agreement, ECF No. 140; Presentence Report "PSR" 3, ECF No. 699.) The PSR describes the conduct underlying Brown's offense. Brown was a member of the Fulton Hill Hustlers (the "FHH"), a criminal organization that "engaged in the distribution of cocaine base . . . and committed acts of violence" in the City of Richmond and Henrico County, Virginia. (*Id.*

¶ 22.) On July 16, 1997, Brown and another member of the FHH shot and killed "Lionel Patron in his [Richmond] apartment." (*Id.* ¶ 38.) Additionally, Brown operated within the FHH as a "street level" distributor between 1992 and 2001, purchasing "cocaine in quarter to half ounce and larger quantities, and then re-distribut[ing] the cocaine base in smaller user amounts." (*Id.* ¶¶ 40, 44.) At the time of his plea, Brown "freely admitted his guilt in court . . . and he appear[ed] to accept responsibility for his conduct." (*Id.* ¶ 46.)

Pursuant to the Sentencing Guidelines, Brown's total offense level of 40 and criminal history category of III resulted in a Guidelines sentencing range of 360 months to life imprisonment. (*Id.* 34.) Prior to sentencing, the PSR provided information on Brown's physical condition, recognizing that Brown was "pistol-whipped . . . [and] [a]s a result, he required surgery and had metal plate inserted in his skull. He reported that he suffers continuing medical problems as result," including seizures, and "he is also required to take medication to alleviate the danger of blood clots." (*Id.* ¶ 67.) Brown currently has a "history of asthma, deep vein thrombosis with a nonhealing ulcer, and a BMI of over 40." (Mot. 1, ECF No. 727)

On May 22, 2002, United States District Judge James R. Spencer sentenced Brown to a term of life imprisonment followed by five years of supervised release. (Prob. Rec. 1, ECF No. 730.) On June 18, 2003, the Court reduced Brown's sentence to a term of 360 months' imprisonment; on October 23, 2018, the Court further reduced his sentence to a term of 288 months' imprisonment. (*Id.*) Brown is currently housed at FMC Lexington in Lexington, Kentucky. (*Id.*) The Bureau of Prisons (BOP) projects that Brown will be released on May 3, 2022. (*Id.*)

On May 27, 2020, Brown submitted a request for compassionate release to the Warden of FMC Lexington. (Mot. 7.) On June 15, 2020, the Warden denied that request. (Mot. Ex. D 38,

2

ECF No. 727-1.) Two weeks later, on June 29, 2020, Brown filed an administrative appeal. (*Id.* 39.)

On October 2, 2020, Brown filed the instant Motion for Compassionate Release through Counsel. (ECF No. 727.) In the Motion, Brown describes the current public health crisis caused by COVID-19. (*See, e.g., id.* 2–4.) Brown, who is currently forty-one-years old, claims that his "history of asthma, deep vein thrombosis with a nonhealing ulcer, and BMI of over 40 . . . places him within the CDC criteria for severe complications from COVID-19." (*Id.* 1.) Brown notes that he "has already contracted COVID-19 once while in prison." (*Id.*) Brown avers that upon his release he "has a stable residence to return to, and the ardent support of a large extended family." (*Id.* 1–2.) The United States opposes his Motion. (*See* ECF No. 733.)

Records indicate Brown is currently housed at Lexington FMC. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. As of April 23, 2021, the BOP reports that 727 inmates at Lexington FMC have tested positive for COVID-19. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/. The BOP further reports that 584 inmates have now been fully vaccinated at Lexington FMC, along with 306 members of its staff. *Id.*

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

[1] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

3

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.
>
> 18 U.S.C. § 3582(c)(1)(A).

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B.     Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[2]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement

---

[2] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

6

does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Brown has sufficiently exhausted his administrative remedies. (*See* Opp'n 9 (acknowledging that Brown "has satisfied the exhaustion requirement").)

Next, the Court finds that while Brown has serious health conditions, he does not appear to be at high risk of suffering from COVID-19, having already contracted and recovered from the disease. Brown's medical records indicate that he has a body mass index ("BMI") of over 40, a history of asthma, and "also suffers from deep vein thrombosis and non-healing ulcers and is on long-term anticoagulants." (Mot. 5; *see also* Mot. Ex. A 21, 25.) Brown cites a recent CDC study to aver that individuals "with obesity (BMI of 30 or higher)" are "'at increased risk'" of enduring "complications from COVID-19," and "[t]hose who 'might be at increased risk' include people [with] moderate to severe asthma." (Mot. 5.) Brown also notes as "potential risk factors" that "he has a metal plate in his skull from being assaulted as a teenager, suffered from seizures, MRSA, and hypothyroidism." (*Id.*) The United States concedes that Brown's medical conditions, namely his high BMI, evince "a particularized susceptibility to contracting a severe case of COVID-19 should he be exposed to the disease." (Opp'n 12–13.)

Although the United States agrees that Brown has serious medical conditions putting him at greater risk should he be exposed to COVID-19, Brown has already contracted COVID-19 and has recovered from it. (Opp'n 13.) While Brown may be "'at increased risk'" of enduring "complications from COVID-19" because of his high BMI, (Mot. 5), the record does not suggest

8

that Brown has experienced severe complications after recovering from the disease.[3] Absent any factual indication that Brown suffered permanent complications from his previous COVID-19 infection, his future risk of COVID-19 complications would be, at the very least, speculative but likely diminished given his full recovery. *See United States v. Evans*, No. 13-cr-173, 2020 WL 6144006, at *6 (W.D. Pa. Oct. 20, 2020) (concluding that future risks of COVID-19 complications are minimal when an inmate recovers from COVID-19); *United States v. Peuse*, No. 17-cr-598, 2020 WL 5076356, at *3 (N.D. Cal. Aug. 24, 2020) (denying "compassionate release to a defendant who has recovered or is expected to recover from COVID-19 with no symptoms"); *United States v. Krietzman*, 2020 WL 4368191 (N.D. Cal. July 30, 2020) (denying compassionate release to a defendant with high blood pressure, high cholesterol, hypertension, and occipital neuralgia who recovered from COVID-19 with no symptoms).

In any event, after considering the relevant statutory sentencing factors, the Court will deny the Motion. Upon review, Brown's criminal history and underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. Brown was a member of a violent street gang for over nine years, and under its auspices he sold large amounts of cocaine base and participated in violent acts, including murder. (PSR ¶¶ 38, 40, 44.) Brown's offenses involving drugs and firearms reflect that he presents a danger both to himself and the community. Brown committed enough eligible infractions to receive a criminal history category of III and a total offense level of 40, resulting in a Guidelines sentencing range of 360 months to

---

[3] In making this observation, the Court does not diminish the seriousness of the ongoing pandemic and the understandable concerns Brown, along with many people, has regarding COVID-19 and its possible long-term side effects or health problems.

life imprisonment. (*Id.* 34.) Despite having no infractions in his last twelve years of incarceration, the nature and circumstances of Brown's offense weigh against granting him compassionate release. (Prob. Rec. 1.)

Turning to other § 3553(a) factors, Brown has served over 75% of his 288 month sentence, during which time he incurred two disciplinary violations: "possessing [an] unauthorized item; and being insolent to [a] staff member." (Prob. Rec. 1.) Although records show that Brown has not committed any disciplinary infractions in the past twelve years, his previous criminal history of violence and firearm-related offenses indicate that the Court should not grant him compassionate release on account of public safety and promoting respect for the law.

Brown contends that his participation in various programs coupled with the support of a large family to help him reenter society should temper the emphasis the Court places on the seriousness of his convictions. (Mot. 1–2.) In *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019), the Fourth Circuit vacated and remanded the District Court's denial of both defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the District Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *See id.* at 397.

While the Court recognizes Brown's participation in programs during his time in prison speaks to his rehabilitation efforts, these post-conviction measures do not warrant his early release in light of the seriousness of his crime and the time remaining on his sentence. The Court commends Brown in the progress he has shown while incarcerated. Congress, however, has

made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Although Brown has served over 75% of his sentence, the prospect of rehabilitation alone does not warrant an "extraordinary and compelling" reason justifying compassionate release. Accordingly, Brown's request for relief fails.

The Court acknowledges that Brown has serious medical concerns, which makes his request for early release during a pandemic difficult. Brown's high BMI may place him at an increased risk of complications stemming from COVID-19. Notwithstanding this risk, Brown has already contracted and recovered from COVID-19, an occurrence that undermines his argument that re-contracting COVID-19 could prove serious or fatal to his health. The Bureau of Prisons has identified Brown's chronic care needs and continues to make medical care available to him, and he is scheduled for release in roughly one year.

In sum, the Court concludes that the record before it does not justify Brown's early release from federal imprisonment.

### IV. Conclusion

For the reasons explained above, the Court will deny the Motion. (ECF No. 727.)

/s/
M. Hannah Lauck
United States District Judge

Date: April 29, 2021
Richmond, Virginia

11